1  MANATT, PHELPS & PHILLIPS, LLP
   SUSAN PAGE WHITE (State Bar No. 137125)
2  E-Mail:  spwhite@manatt.com
   EMIL PETROSSIAN (State Bar No. 264222)
3  E-Mail:  epetrossian@manatt.com
4  11355 West Olympic Boulevard
   Los Angeles, California 90064-1614
5  Telephone:  (310) 312-4000
   Facsimile:  (310) 312-4224
6

7  *Attorneys for Plaintiff*
   ISOLATION NETWORK, INC.
8  D/B/A INGROOVES

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  ISOLATION NETWORK, INC. d/b/a INGROOVES, a California corporation, | Case No. |
| 13 | |
| 14                         Plaintiff, | **COMPLAINT FOR:** |
| 15              vs. | **1.  BREACH OF CONTRACT** |
| 16 | **2.  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| 17  WESTCHESTER SURPLUS LINES INSURANCE COMPANY, a Georgia corporation, and DOES 1-10, inclusive, | **3.  DECLARATORY RELIEF** |
| 18 | |
| 19                       Defendants. | **JURY TRIAL DEMANDED** |
| 20 | |

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Plaintiff Isolation Network, Inc. d/b/a INgrooves ("INgrooves"), by and

2   through its undersigned counsel, alleges against defendant Westchester Surplus

3   Lines Insurance Company ("Defendant") as follows:

4                    **NATURE OF ACTION AND RELIEF SOUGHT**

5        1.    Under California law, every insurer owes an implied duty not to

6   unreasonably withhold benefits due to an insured.  *Gruenberg v. Aetna Ins. Co.*,

7   9 Cal. 3d 566, 575 (1973).  Defendant has violated that duty, and its express

8   contractual obligations to INgrooves, by denying coverage to INgrooves under

9   Digital Technology and Professional Liability Policy No. G24203529 002 (the

10  "Policy").  A true and correct copy of the Policy is attached hereto as **Exhibit A**

11  and is incorporated herein by reference.

12       2.    INgrooves is a digital music aggregator.  It acts as a conduit for

13  distribution of artists' music through digital music stores and streaming platforms

14  such as GooglePlay, iTunes, Spotify, and Amazon.  In general, INgrooves bundles

15  digital rights consisting of copyrights in sound recordings and performers' rights,

16  and delivers them to digital music retailers.  INgrooves facilitates the distribution of

17  digital music content for independent labels, established artists, and other content

18  owners.

19       3.    At all relevant times, INgrooves was insured under the Policy sold to it

20  by Defendant.  The Policy promised a broad range of protections to INgrooves,

21  such as coverage of defense costs and indemnity for certain "Wrongful Acts,"

22  including activities resulting in "Media Injury."

23       4.    While the Policy was in effect, certain digital music stores and

24  streaming platforms sent notices to INgrooves demanding that INgrooves defend

25  and indemnify them in connection with a putative class action filed in 2012,

26  allegedly involving musical content distributed by INgrooves entitled *Blagman v.*

27  *Apple Inc. et al.*, Case No. 12-cv-5453 (ALC) (S.D.N.Y.) (the "*Blagman* suit").

28

1   The music retailers named as defendants in the *Blagman* suit were Apple Inc.,

2   Amazon.com Inc., Google Inc., eMusic.com Inc., and Microsoft Corporation

3   (collectively, the "Retailers").  The plaintiff in the *Blagman* suit asserted copyright

4   infringement claims against the Retailers based upon their allegedly unlicensed or

5   unauthorized reproduction, distribution, and sale of copyrighted musical

6   compositions owned by the plaintiff and the putative class members.  Each of these

7   entities (except Amazon.com Inc.), sent demands to INgrooves in 2012, seeking

8   indemnification pursuant to the indemnification provisions and representations and

9   warranties in their respective distribution agreements with INgrooves.  INgrooves

10  timely notified Defendant of the Retailers' indemnification demands.

11        5.      The *Blagman* suit was settled in January 2016.  To date, two of the

12  five Retailers (Google and Microsoft) have made specific monetary demands to

13  INgrooves for indemnification of portions of their defense fees and settlement

14  sums.

15        6.      As the *Blagman* suit was being settled, Defendant initially

16  acknowledged its defense obligations to INgrooves in a letter dated December

17  2015.  However, in August 2016, Defendant suddenly reversed course and denied

18  coverage based on a breach of contract exclusion in the Policy.

19        7.      INgrooves repeatedly has asked Defendant to provide coverage to

20  INgrooves pursuant to Insuring Agreement B, titled "Electronic Media Activities

21  Liability," and repeatedly has explained why Defendant's coverage denial is

22  wrongful.  Specifically, the breach of contract exclusion does not apply given the

23  specific grant of coverage in an endorsement to the Policy, which adds coverage for

24  breach of contract claims arising out of the submission of musical content —

25  precisely the type of claims asserted against INgrooves here by the Retailers.

26  Nevertheless, Defendant has refused to reconsider its coverage denial or to extend

27

28

1  coverage to INgrooves.  Thus, Defendant has breached its express coverage
2  obligations to INgrooves under the Policy.

3       8.    Defendant also has breached the implied covenant of good faith and
4  fair dealing by, among other things, failing to conduct a reasonable investigation of
5  INgrooves' coverage claim and carrying out a campaign of delay and
6  nonresponsiveness.  The parties' pre-lawsuit correspondence is rife with examples
7  of Defendant's lack of responsiveness and dilatory tactics in the face of INgrooves'
8  repeated requests for a coverage determination and for updates regarding coverage
9  status.  Defendant has acted unreasonably also by focusing on irrelevant and
10  collateral issues such as subrogation, relying on spurious arguments to justify its
11  coverage denial, and favoring its own interests above INgrooves' interests.

12                            **THE PARTIES**

13       9.    INgrooves is a corporation organized and existing under the laws of
14  the State of California, with its principal place of business in Encino, California.

15       10.   INgrooves is informed and believes, and on that basis alleges, that
16  Defendant is a corporation organized and existing under the laws of the State of
17  Georgia, with its principal place of business in Philadelphia, Pennsylvania.
18  Defendant is authorized to transact, and is transacting, business in the State of
19  California and the County of Los Angeles.  INgrooves is informed and believes,
20  and on that basis alleges, that Defendant was formerly one of the ACE Group of
21  insurers, and became one of the Chubb Group of Insurance Companies after ACE
22  purchased Chubb.  ACE is now known as Chubb.

23                       **JURISDICTION AND VENUE**

24       11.   This Court has subject matter jurisdiction over the claims in this action
25  under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship
26  between INgrooves and Defendant, and the amount in controversy exceeds
27  $75,000, exclusive of interest and costs.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

12.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(1), (c), and (d) because Defendant is a resident of this district, in that it has the capacity to sue and be sued in its common name under applicable law, and is subject to the Court's personal jurisdiction with respect to this action.  Venue is proper in this judicial district also under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this district. Venue is proper in this judicial district also under 28 U.S.C. § 1391(b)(3) because Defendant is subject to the Court's personal jurisdiction.

## THE RELEVANT COVERAGE TERMS UNDER THE POLICY

13.     INgrooves purchased the Policy from Defendant in April 2012. INgrooves paid significant premiums to Defendant under the Policy.  The Policy was in effect from April 23, 2012 to April 23, 2013.

14.     Insuring Agreement B, titled "Electronic Media Activities Liability," provides up to $5 million in coverage to INgrooves for

> Damages and Claims Expenses by reason of a Claim first made
> against the Insured during the Policy Period and reported to the
> Insurer pursuant to Section VIII, Notice, for any Wrongful Acts taking
> place after the Retroactive Date and prior to the end of the Policy
> Period.

(Ex. A § I.B.)

15.     The Policy defines "Damages" to include "compensatory damages . . . and settlements which the Insured becomes legally obligated to pay on account of any Claim first made against any Insured during the Policy Period . . . for Wrongful Acts to which this Policy applies."  (*Id.* § II.I.)  Under the plain terms of the Policy, any amounts that INgrooves must pay to the Retailers as indemnification for settlement of the *Blagman* suit constitute Damages under the Policy.

16.    The Policy defines "Claims Expenses" to mean, in pertinent part, "reasonable and necessary attorneys' fees . . . and other fees and costs incurred by . . . the Insured with the Insurer's prior written consent, in the investigation and defense of a covered Claim." (*Id*. § II.F.)

17.    The Policy defines "Claim" to include "a written demand against any Insured for monetary or non-monetary damages." (*Id*. § II.E.)  The Retailers' indemnification demands to INgrooves easily satisfy this definition and constitute Claims under the Policy.

18.    Those Claims, in turn, arise out of alleged "Wrongful Acts" that took place after the "Retroactive Date" (April 23, 2007) and before the end of the "Policy Period" (April 23, 2013), in accordance with Insuring Agreement B.  The Policy defines "Wrongful Act" to mean

> any error, misstatement, misleading statement, act, omission, neglect, breach of duty, or Personal Injury offense, actually or allegedly committed or attempted by any Insured in their capacity as such . . . in the course of the provision of Electronic Media Activities, which gives rise to any of the following Claims against an Insured:
>
> . . . .
>
> Media Injury.

(*Id*. § II.OO.2, as amended by Media Injury Endorsement § B.3.)

19.    "Media Injury" means, among other things:

> a.    infringement of copyright, plagiarism, piracy or misappropriation of ideas; [or]
>
> . . .
>
> c.    ***breach of any express or implied contract arising out of the actual or alleged submission of any material, idea or***

1    *process* (including any newsworthy, literary, dramatic,

2    musical, audio visual, visual or other similar or analogous

3    material or process used by the Insured or others).

4  (*Id.*, Media Injury Endorsement § 1.A (emphasis added).)

5    20.    "Electronic Media Activities" are defined to include "the electronic . . .

6  dissemination, releasing, gathering, transmission, production, . . . or other

7  distribution of Electronic Content on the Internet on behalf of the Insured or by the

8  Insured for others." (*Id.* § II.M.)  Subject to certain inapplicable exceptions,

9  "Electronic Content" means, in pertinent part, "any ***data***, text, ***sounds***, images or

10  similar matter ***disseminated electronically*** . . . ." (*Id.* § II.L (emphasis added).)

11    21.    Electronic Media Activities also consist of "Media Services" pursuant

12  to the "Media Injury Endorsement." (*Id.*, Media Injury Endorsement § 1.B.2.)

13  "Media Services" mean "Advertising, Broadcasting, and Publishing." (*Id.* § 1.A.)

14  "Publishing," in turn, is defined to mean "publication, republication, serialization,

15  exhibition ***or distribution*** of Matter." (*Id.* (emphasis added).)  "Matter," in turn, is

16  defined as

17    [a]ny communication, regardless of its form, including advertising,

18    art, creative expression, ***data***, entertainment, film, facts, fiction,

19    graphics, literary composition, ***music***, news, photographs, pictures,

20    opinions, ***sound recordings*** and video, ***and the use of such matter by***

21    ***others with permission of the Insured***.

22  (*Id.* (emphasis added).)

23    22.    In sum, Insuring Agreement B affords coverage to INgrooves for

24  Damages and Claims Expenses, including compensatory damages and settlement

25  amounts, that INgrooves becomes legally obligated to pay on account of any Claim

26  made against it for Wrongful Acts.  The Retailers' indemnification demands are

27  Claims arising from Wrongful Acts because they arise out of INgrooves' alleged

28

errors, acts, omissions, and breaches of duty in the course of Electronic Media Activities — namely, the publication, dissemination, and distribution of both digital and musical content, including digital sound recordings, to the Retailers. Accordingly, the Retailers' indemnification claims against INgrooves constitute Claims arising out of Electronic Media Activities, which are directly covered under Insuring Agreement B of the Policy.

23.     The Policy also contains an exclusion precluding coverage of any Claim:

> [f]or breach of any express, implied, actual or constructive
> contract, warranty, guarantee, or promise, including any actual or
> alleged liability assumed by the Insured, unless such liability
> would have attached to such Insured even in the absence of such
> contract, warranty, guarantee, or promise.

(*Id*. § III.C (the "Contract Exclusion").)

24.     The Contract Exclusion does not apply, however, to any claim that conflicts with the specific coverage afforded under the Media Injury Endorsement of the Policy.  Indeed, the Media Injury Endorsement expands coverage to INgrooves by specifically ***adding*** coverage for breach of contract claims arising out of the submission of musical content.

25.     Thus, the Policy specifically provides coverage to INgrooves for claims concerning "breach of any express or implied contract arising out of the actual or alleged submission of any material, idea or process."  The indemnification demands asserted against INgrooves constitute precisely such claims.

## **THE RETAILERS' INDEMNIFICATION DEMANDS TO INGROOVES**

26.     In July 2012, a composer named Norman Blagman filed a putative class action against the Retailers, asserting claims of copyright infringement against them based on their alleged unlicensed or unauthorized reproduction, distribution,

1   and sale of copyrighted musical compositions allegedly owned by Blagman and the
2   putative class members.

3        27.    Shortly after being sued, the Retailers (except Amazon.com Inc.) sent
4   indemnification demands to INgrooves between August and October 2012,
5   demanding that INgrooves defend and indemnify them in connection with the
6   *Blagman* suit.  Those demands were made pursuant to indemnification provisions in
7   each of INgrooves' agreements with the Retailers, as well as INgrooves'
8   representations and warranties in those agreements that it had all necessary rights,
9   authorizations, and licenses to distribute the sound recordings, and that the
10  Retailers' authorized use of the content would not infringe any third parties' rights.

11       28.    INgrooves agreed to defend and indemnify the Retailers for third-party
12  claims based on or arising out of their unauthorized use of any content distributed
13  by INgrooves, or any allegations that would constitute a breach of INgrooves'
14  representations and warranties under the distribution agreements.

15       29.    While INgrooves was not named as a defendant in the *Blagman* suit, at
16  least one musical track that INgrooves distributed to one or more of the Retailers
17  was at issue in that case.  In addition, the Retailers claimed that INgrooves had
18  distributed some of the musical tracks covered by the putative class.

19                **DEFENDANT'S BREACHES OF ITS CONTRACTUAL DUTIES**

20       30.    In September 2012, while the Policy was in effect, INgrooves timely
21  notified Defendant of the Retailers' indemnification demands.  A few years later,
22  after the filing of a Third Amended Class Action Complaint in the *Blagman* suit in
23  April 2015, INgrooves reiterated its request to Defendant for coverage under the
24  Policy.

25       31.    INgrooves and Defendant engaged in a series of communications over
26  the subsequent eight months, during which Defendant often failed to respond to
27  INgrooves for long periods of time and ignored INgrooves' repeated requests for a

28

coverage determination.  Finally, on December 21, 2015, Defendant agreed to defend INgrooves pursuant to the Electronic Media Activities coverage set forth in Insuring Agreement B of the Policy.  A true and correct copy of Defendant's December 21, 2015 letter is attached hereto as **Exhibit B** and is incorporated herein by reference.  Although Defendant reserved its rights under a few exclusions, including the Contract Exclusion, it plainly had determined that the exclusion was not a valid basis to deny coverage entirely.  Otherwise, Defendant would have denied coverage in December 2015.

32.    Even though nothing occurred between December 2015 and August 2016 to change the operative analysis regarding the inapplicability of the Contract Exclusion, on August 8, 2016, Defendant abruptly reversed course and sent another letter to INgrooves in which Defendant denied coverage based solely on the Contract Exclusion.  A true and correct copy of Defendant's August 8, 2016 denial letter is attached hereto as **Exhibit C** and is incorporated herein by reference.

33.    In its August 8, 2016 denial letter, Defendant conceded that: (a) the indemnification claims against INgrooves constitute Claims for Electronic Media Activities under the Policy; (b) the Claims were made and reported during the Policy Period; and (c) the Claims arose from alleged Wrongful Acts, which took place after the Retroactive Date (April 23, 2007) and before the end of the Policy Period (April 23, 2013).  (Ex. C at 9-10.)  Defendant also acknowledged that the Policy provides coverage for copyright infringement claims, and that the Retailers were alleging that INgrooves delivered to them "allegedly infringing musical compositions without proper licenses and authorizations, thereby causing the [Retailers] to infringe on third parties' copyrights."  (*Id.* at 10.)  Defendant further stated that the indemnification demands are based on allegations that "INgrooves breached its warranties" to the Retailers by delivering the infringing compositions. (*Id.*)

34.     Thus, Defendant already has conceded coverage here based on INgrooves' representations that the compositions would not infringe any third parties' copyrights, and because of the occurrence of a Media Injury as defined in the Endorsement — i.e., the alleged breach of any express or implied contract arising out of the submission of any material, idea or process, including any musical or analogous material or process used by INgrooves or others.

35.     Nevertheless, in its August 8, 2016 letter, Defendant wrongfully and unreasonably denied coverage based upon the Contract Exclusion.

36.     INgrooves responded to Defendant's August 8, 2016 denial on August 22, 2016, explaining that the Contract Exclusion does not apply because it conflicts with, and is superseded by, the coverage afforded under the Media Injury Endorsement.  A true and correct copy of INgrooves' August 22, 2016 letter is attached hereto as **Exhibit D** and is incorporated herein by reference.  Indeed, the coverage granted to INgrooves for claims alleging breach of contract is contained in an Endorsement, which is more specific and trumps any conflicting language contained in the more general language found in the Contract Exclusion, which is part of the general Policy form.  *Aerojet-General Corp. v. Transport Indem. Co.,* 17 Cal.4th 38, 50 n.4 (1997) (terms in an endorsement control over inconsistent provisions in the printed policy form); *McConnell v. Underwriters at Lloyds of London*, 56 Cal.2d 637, 640 (1961) ("If there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls.").

37.     Defendant responded to INgrooves on September 12, 2016 that the Media Injury Endorsement had not been triggered by the Retailers' indemnification demands.  A true and correct copy of Defendant's September 12, 2016 letter is attached hereto as **Exhibit E** and is incorporated herein by reference.  Defendant's denial of coverage under the Media Injury Endorsement is meritless and unreasonable.  Defendant has twisted and distorted the plain language of the Policy

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

1   to deny coverage in violation of its contractual duties and the implied covenant of
2   good faith and fair dealing.

3        38.    Defendant denied coverage even though its interpretation of the Policy
4   is untenable and frustrates the very purpose for which INgrooves purchased the
5   Policy and paid premiums.  In essence, Defendant contends that INgrooves
6   purchased a policy that does nothing to protect INgrooves' operation of its core
7   business — the distribution of sound recordings to digital music retailers.

8        39.    Furthermore, Defendant's purported grounds for denying coverage
9   demonstrate its failure to properly investigate INgrooves' claim, as it is apparent
10  that Defendant has a complete lack of understanding of the coverage provided to
11  INgrooves under the Policy, the impetus for the indemnification demands, or the
12  nature of INgrooves' business.  The Retailers' indemnification demands against
13  INgrooves entail alleged breaches of distribution agreements providing warranties
14  to the Retailers with respect to the clearance of rights in connection with the
15  submission of digital music content.  Defendant easily would have known these
16  facts had it conducted even the most basic investigation of the indemnification
17  claims instead of focusing all of its efforts and resources to concocting reasons to
18  deny coverage.

19       40.    Defendant's bad faith conduct, coupled with its breaches of the
20  Policy's coverage provisions, has caused substantial harm and damage to
21  INgrooves.

22                    **<u>FIRST CLAIM FOR RELIEF</u>**
23                    **(Breach of Contract Against Defendant)**

24       41.    INgrooves repeats and realleges each and every allegation contained in
25  Paragraphs 1 through 40 above as though set forth fully herein.

26       42.    The indemnification demands seek Damages on account of Wrongful
27  Acts under the Policy.  And, Defendant is obligated under the Policy to pay in full

28

all sums that INgrooves became obligated to pay to the Retailers for INgrooves' portion owing of the settlement of the *Blagman* suit.

43.    Defendant also had duties to pay defense costs and indemnify INgrooves in connection with the indemnification demands.  Defendant's defense duty was owed immediately and its commitment to pay defense costs was a significant right afforded to it under the Policy.   Indeed, Defendant's duties arose at the time of notice and continue until INgrooves has been fully reimbursed for all of the defense fees and costs and for the settlement amount INgrooves must pay.

44.    Defendant breached its duties when it: (a) refused to pay any portion of the defense costs or settlement owing; and (b) interpreted the Policy in an unreasonable manner to deprive INgrooves of the insurance coverage for which it paid.

45.    INgrooves has duly performed and/or complied with all terms and conditions required by the Policy that were not excused by Defendant's breaches and/or other conduct.

46.    As a direct, proximate and foreseeable result of Defendant's breaches of its duties under the Policy, Defendant has deprived INgrooves of the benefit of insurance coverage for which INgrooves paid substantial premiums.  INgrooves has been damaged in an amount excess of the Court's jurisdictional limits, plus interest.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith
### and Fair Dealing Against Defendant)

47.    INgrooves repeats and realleges each and every allegation contained in Paragraphs 1 through 46 above as though set forth fully herein.

48.    Implied in the Policy sold by Defendant were covenants that Defendant would act in good faith and deal fairly with its insured, that Defendant would do nothing to interfere with the rights of INgrooves, its insured, to receive

1  the benefits of the Policy, and that Defendant would give at least the same level of
2  consideration to its insured's interests as it gives to its own interests.

3      49.    Defendant had a duty to conduct a thorough investigation of
4  INgrooves' claims for coverage and seek facts that would support INgrooves'
5  claim. INgrooves is informed and believes, and on that basis alleges, that instead of
6  doing so, and before conducting any meaningful or objective investigation of
7  INgrooves' claims, Defendant denied coverage and wrongfully adopted the position
8  that the Contract Exclusion precludes coverage.

9      50.    In the course of denying coverage and failing and/or refusing to defend
10  or indemnify INgrooves, Defendant has breached the implied covenant of good
11  faith and fair dealing by, among other things:

12      (a)    failing and refusing to pay any portion of the defense costs owed by
13            INgrooves to the Retailers in response to their indemnification
14            demands for defense of the *Blagman* suit, without any basis in fact or
15            law to do so, despite the fact that Defendant originally had conceded
16            that the indemnification demand were potentially covered;

17      (b)    wrongfully refusing to indemnify INgrooves for the amount it will pay
18            in settlement of the *Blagman* suit to the Retailers, up to the limits of
19            liability of the Policy;

20      (c)    failing to conduct a full and thorough investigation of Retailers'
21            Claims against INgrooves in connection with the *Blagman* suit and
22            facts surrounding the dispute, and asserting grounds for denying
23            coverage based on its inadequate investigation;

24      (d)    wrongfully asserting grounds for denying coverage that Defendant
25            knows are not supported by, and in fact are contrary to, the terms of
26            the Policy, the law, insurance industry custom and practice, and the
27            facts;

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

(e)    failing to fully inquire into possible bases that might support coverage for the indemnification demands from the Retailers for the *Blagman* litigation;

(f)    failing to honor its promises and representations in its Policy that it would pay defense costs and indemnify for claims alleging "Wrongful Acts;"

(g)    wrongfully and unreasonably engaging in improper delays, failures to perform, and delay tactics;

(h)    wrongfully and unreasonably forcing INgrooves to incur the expense of filing the present action to recover benefits owing under the Policy;

(i)    wrongfully and unreasonably placing its own interests above those of its insured; and

(j)    otherwise acting as alleged above.

51.    Defendant did the things and committed the acts alleged above for the purpose of consciously withholding from INgrooves the rights and benefits to which it is entitled under the Policy.

52.    Defendant's acts are inconsistent with the reasonable expectations of INgrooves, violate established claims practices and legal requirements, contravene the express terms of Defendant's Policy, and constitute bad faith.

53.    As a direct and proximate result of Defendant's acts, INgrooves has been damaged in an amount in excess of the Court's jurisdictional limits.  These damages include the amount of the loss that Defendant is obligated to pay under the Policy, plus interest, in an amount to be proven at trial.

54.    Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), INgrooves is entitled to recover all attorneys' fees that it reasonably has incurred, and continues to incur, in its efforts to obtain the benefits of insurance that Defendant has withheld, and continues to withhold, wrongfully and in bad faith.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

14

The precise amount of those fees is presently unknown and will be ascertained at the appropriate time.

55.     Defendant's conduct is despicable and has been done with a conscious disregard of the rights of INgrooves, constituting oppression, fraud, and/or malice, in that Defendant engaged in a series of acts designed to deny the benefits due under its Policy.  Specifically, Defendant, by acting as alleged above, in light of information, facts, and relevant law to the contrary, consciously disregarded the rights of INgrooves and forced it to incur financial losses, which continue to accrue, without any assistance from Defendant, thereby inflicting financial damage on INgrooves.  Defendant has ignored the interests and concerns of INgrooves with the requisite intent to injure within the meaning of California Civil Code § 3294. Therefore, INgrooves is entitled to recover punitive damages from Defendant in an amount that is sufficient to punish and make an example of Defendant and in order to deter similar conduct in the future.

### THIRD CLAIM FOR RELIEF

**(Declaratory Relief Against Defendant and Does 1 through 10)**

56.     INgrooves repeats and realleges each and every allegation contained in Paragraphs 1 through 55 above as though set forth fully herein.

57.     INgrooves is informed and believes, and on that basis allege, that Defendant and Does 1 through 10 dispute that INgrooves is entitled to insurance coverage for the indemnification demands.  Therefore, an actual and justiciable controversy exists between INgrooves, on the one hand, and Defendant and Does 1 through 10, on the other hand, concerning the matters alleged herein.

58.     INgrooves therefore seeks a judicial declaration as to the duties of Defendant, and Does 1 through 10, including the duty to pay defense costs and to indemnify INgrooves under the Policy, confirming that INgrooves' contentions, as stated above, are correct.  A declaration is necessary at this time in order that the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   parties' dispute may be resolved and that they may be aware of their respective

2   rights and duties.

3                               **PRAYER FOR RELIEF**

4        WHEREFORE, INgrooves prays for judgment as follows:

5        1.      On the First Claim for Relief, for damages, plus interest, according to

6   proof at the time of trial, but in excess of the jurisdictional limit;

7        2.      On the Second Claim for Relief:

8                a.      For damages, plus interest, according to proof at the time of

9                        trial;

10               b.      For reasonable attorneys' fees and expenses incurred in

11                       obtaining the benefits due under the Policy, plus interest;

12               c.      For punitive damages in an amount to be determined at the time

13                       of trial;

14       3.      On the Third Claim for Relief, for a declaration in accord with

15   INgrooves' contentions stated above;

16       4.      On all claims for relief:

17               a.      For costs of suit incurred herein;

18               b.      Interest; and

19               c.      For such other, further, and/or different relief as may be just and

20                       proper.

21

22   Dated:    June 6, 2017           MANATT, PHELPS & PHILLIPS, LLP
                                      Susan Page White
23                                    Emil Petrossian

24

25                                    By:____/s/ Susan Page White_____

26                                        Susan Page White
                                          *Attorneys for Plaintiff*
27                                        ISOLATION NETWORK, INC.
                                          D/B/A INGROOVES
28

# **DEMAND FOR JURY TRIAL**

Plaintiff Isolation Network, Inc. d/b/a INgrooves hereby demands a trial by jury on all claims, defenses, and issues that may be so tried.

Dated:    June 6, 2017              MANATT, PHELPS & PHILLIPS, LLP
                                    Susan Page White
                                    Emil Petrossian


                                    By:____/s/ Susan Page White_____
                                        Susan Page White
                                        *Attorneys for Plaintiff*
                                        ISOLATION NETWORK, INC.
                                        D/B/A INGROOVES

318499128